Dissenting Opinion by
McDonald, J.,
which Barbera, C.J., joins.
I agree with the Majority opinion in one respect—there should be no distinction between the appealability of a denial of a motion to compel arbitration filed in an existing action and a denial of a petition to compel arbitration filed in a separate action concerning the same dispute. But I disagree with the Majority opinion in another respect. In my view, the General Assembly provided that there is a right to an immediate appeal in both circumstances when it adopted the Uniform Arbitration Act.[1] We should respect that policy decision concerning appealability, even if we have doubts about the merits of diverting a particular case to arbitration.
*73 As the Majority opinion recounts, in American Bank, Holdings, Inc. v. Kavanagh, 436 Md. 467, 471-76, 82 A.3d 867 (2013), this Court held that a denial of a motion to compel arbitration in an existing case was not appealable while acknowledging that the denial of a petition to compel arbitration of the same dispute in a separate action would be appealable as a final judgment. The majority opinion in Kavanagh painted itself into that corner in its effort to reconcile its holding with prior decisions of this Court.
The Majority opinion in this case offers a revisionist view of Kavanagh. It states that the Kavanagh majority “recognized that where there is no underlying or additional litigation, as in Litton [Bionetics, Inc. v. Glen Constr. Co., Inc., et al.], 292 Md. [34] at 42, 437 A.2d [208] a denial of a petition to compel, or consolidate, arbitration proceedings is immediately appeal-able.” Majority op. at 67, 163 A.3d at 185. The Majority opinion is mistaken, in at least two respects. First, the Kavanagh opinion actually cited Litton Bionetics—together with Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P’shp, 346 Md. 122, 695 A.2d 153 (1997)—for the proposition that “an order denying a petition to compel arbitration as an independent action ... is appealable” without the gloss that the Majority opinion now adds. Kavanagh, 436 Md. at 468, 82 A.3d 867. Second, in the other case relied upon by Kavanagh—Scarlett Harbor—there was related underlying litigation, yet this Court simply stated, as did the Kavanagh majority opinion, that “[a]n order denying a claim that arbitration should be compelled in an action in which that is the sole claim asserted is an appealable judgment.” 346 Md. at 126 n.5, 695 A.2d 153.
The Court of Special Appeals has recognized that, under the reasoning of the Kavanagh majority opinion, it was a “foregone conclusion” that a denial of a request for arbitration is appealable if made in a separate action, but not if made in an existing action concerning the same subject matter. Future-Care NorthPoint, LLC v. Peeler, 229 Md.App. 108,123-24,143 A.3d 191 (2016). Litigators have been advised to take the distinction made by Kavanagh into account when deciding how to enforce an arbitration clause. See I.C. Wolpert, Appealabili *74 ty of an Order to Stay or Compel Arbitration, 69 Dispute Res. J. 91 (2014). The Court now abandons that distinction.
As I indicated in my dissent in Kavanagh, I found the distinction made by the Kavanagh majority opinion not only incongruous, but also contrary to the legislative history of the Maryland Uniform Arbitration Act and a prior decision of the Court of Special Appeals that had analyzed that legislative history. Kavanagh, 436 Md. at 479-96, 82 A.3d 867 (McDonald, J., dissenting); see also Regina Construc. Corp. v. Envirmech Contracting Corp., 80 Md.App. 662, 665 A.2d 693 (1989) (Wilner, J.).[2] That legislative history clearly indicates that the Legislature intended to allow immediate appeals in both situations.
The Majority opinion in this case makes a passing reference to the legislative history of the Maryland Uniform Arbitration Act and concedes that the 1973 code revision that resulted in the current version of the law did not effect a substantive change in that law. Majority op. at 69-71, 163 A.3d at 186-87. However, the Majority opinion ignores the fact that, prior to the 1973 code revision, the act indisputably provided for an immediate appeal of denial of a motion to compel arbitration. See Maryland Code, Article 7, §§ 2, 18(a)(1) (1968 Repl. Vol.).
In the end, while the Majority opinion perpetuates the Kavanagh majority opinion’s misreading of the statute and its *75 legislative history, it does have the virtue of eliminating the internal inconsistency of the Kavanagh majority opinion.
In any event, for the reasons explained in my dissent in Kavanagh, the result in this case, as well as in Kavanagh, is contrary to the direction that the General Assembly gave in the Maryland Uniform Arbitration Act.[3] This does not mean that this dispute necessarily should be decided by an arbitrator, but it does mean that we should decide now whether it must be. One might disagree with a legislative policy favoring arbitration[4] including the decision to allow immediate appeala-bility in these circumstances, but that is the General Assembly’s prerogative and there is some common sense to it— better to decide now whether a case must be diverted to arbitration rather than determine in a later appeal after trial that judicial resources have been expended for naught.
Chief Judge Barbera has advised that she joins this opinion.

. It is notable that the Supreme Court decision construing the Federal Arbitration Act that is cited in the Majority opinion (Majority op. at 61-63, 163 A.3d at 181-82) in support of a consistent approach to appeala-bility in these circumstances actually held in favor of appealability. Green Tree Fin, Corp.-Alabama v. Randolph, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

. In Regina, Judge Wilner reviewed in some detail the legislative history of the arbitration act and the effect of code revision and explained: "In enacting the Courts & Judicial Proceedings Article, the General Assembly seemed to accept the notion that an order denying a petition or application to compel arbitration was immediately appealable, and indeed appeared to believe that it was appealable as a final judgment.” 80 Md.App. at 670, 565 A.2d 693. As a result of that analysis, Judge Wilner concluded that the appeal in Regina was properly before the intermediate appellate court and proceeded to discuss the merits of the appeal. The majority opinion in Kavanagh did not address that analysis of the legislative history and largely distinguished Regina on the ground that the case had not been previously cited in the Court of Appeals and on the reasoning of a 1978 decision of the Court of Special Appeals that preceded Regina and that had turned on a then-existing distinction between courts of law and courts of equity which, as Judge Wilner had noted in Regina, no longer exists. Kavanagh, 436 Md. at 477-78, 82 A.3d 867.

. In a footnote, the Majority opinion suggests, as did the Kavanagh majority opinion, that the General Assembly has acquiesced in its interpretation of the Maryland Arbitration Act, Majority op. at 70-71 n.4, 163 A.3d at 187 n.4, As I noted in my dissent in Kavanagh, it is somewhat contradictory to rely on a notion of "legislative acquiescence” and at the same time assert that earlier cases did not determine the issue before the Court. Compare Kavanagh, 436 Md. at 468, 82 A.3d 867 with id. at 475 n.19, 82 A.3d 867. In addition, while legislative inaction might be significant "where bills have repeatedly been introduced in the General Assembly to accomplish a particular result, and the General Assembly has persistently refused to enact such bills,” Moore v. State, 388 Md, 623, 640, 882 A.2d 256 (2005), that is not the case here. Finally, this Court has frequently described legislative inaction as a “weak reed upon which to lean.” E.g., Sherwood Brands v. Great American Ins. Co., 418 Md. 300, 321 n.16, 13 A.3d 1268 (2011).

. The court system is the original system of "alternative dispute resolution.” It replaced the old system of blood feuds and violence. In time it became the official system of dispute resolution. During the last century there has been significant legislative and judicial enthusiasm for other alternatives, such as arbitration, which have collectively assumed the title of "alternative dispute resolution.” It is not entirely clear that such alternatives are always fair, or efficient, or are truly an "alternative” that is voluntarily chosen by all of the parties. Thus, whether alternative dispute resolution is always preferable to judicial resolution is certainly open to debate.